**IN THE COURT OF APPEALS OF IOWA**

No. 15-1727
Filed December 9, 2015

**IN THE INTEREST OF M.M., C.R.,
and C.B.,
      Minor Children,**

**P.M., Mother,**
      Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, David F.

Staudt, Judge.


A mother appeals the termination of her parental rights to three children.

**AFFIRMED.**


Linda A. Hall of Linda Hall Law Firm, P.L.L.C., Cedar Falls, for appellant.

Thomas J. Miller, Attorney General, and Kathrine Miller-Todd, Assistant

Attorney General, for appellee.

Melissa Anderson-Seeber of Juvenile Public Defender's Office, Waterloo,

attorney and guardian ad litem for minor children.


Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Citing a "troubling" lack of progress in the mother's "communication, discipline, and overall interaction with her children," the juvenile court terminated her parental rights to one daughter and two sons—ages five, three and two years. The court found the mother "incapable of maintaining the safety of the children" even during supervised visitations. The mother appeals, seeking six more months to achieve reunification. She also raises issues concerning reasonable efforts by the Department of Human Services (DHS), the children's best interests, and a strong mother-child bond. After reviewing the record, we agree with the juvenile court's concerns about the children's safety and well-being if returned to their mother's care. Accordingly, we affirm.

## I.      Background facts and proceedings

Our decision impacts three children: M.M. born in 2010, C.R. born in 2012, and C.B. born in 2013. At C.B.'s birth in December 2013, his cord blood tested positive for marijuana and methamphetamine. At that point, the family agreed to a DHS safety plan and began receiving services. The mother had a history of substance abuse, as well as mental health concerns. She participated in a dual diagnosis program in Fort Dodge in early 2014, while having custody of her children, but was unsuccessfully discharged for "vulgar outbursts" and inappropriate discipline of the children.

The DHS removed the children from their mother's care in June 2014, and the court adjudicated them as children in need of assistance (CINA) on July 24, 2014, based on the stipulation of the parents. The concerns at that time were

four-fold: (1) the mother had a history of illegal drug abuse; (2) the mother had a diagnosis of bipolar disorder, but was not complying with her medication regime; (3) the mother engaged in "harsh treatment" of the children; and (4) the mother had unstable living conditions.

During the ensuing year, the mother made some progress with her substance abuse issues, though she did not fully satisfy the DHS expectations. She underwent intensive outpatient treatment from January through March 2015, but she did not attend the appointment set to discuss extended treatment. The mother regularly attended a support program called Celebrate Recovery, which encouraged her continued sobriety. And she worked with a Parent Partner for support with her recovery. But the mother did not comply with drug testing during the CINA case. The mother admitted using marijuana in the weeks before the termination hearing and acknowledged she did not share this setback with her Parent Partner.

As for her mental health and parenting issues, the mother stopped taking medication for her psychiatric diagnoses during the course of the CINA case, reporting that she felt stable and no longer needed treatment. But the DHS case worker believed anger management remained an issue for the mother. The FSRP (family safety, risk, and permanency) worker testified the mother was unable to appropriately supervise all three children at the same time. The worker often had to intervene to ensure the children remained safe from hazards during supervised visitations.

On the issue of housing, the DHS worker noted the mother followed a pattern of moving "in with paramours and counting on them for housing versus having her own housing." The mother was the victim of domestic violence during her relationships with these paramours. The worker believed the mother's tenuous living arrangements were confusing and potentially dangerous for the children.

The State filed its petition to terminate parental rights on June 24, 2015, which alleged the mother "has a history of instability, and continues to require a high level of rehabilitative services interventions in order to meet her own day to day needs." The juvenile court held a termination hearing on July 16, 2015. On September 30, 2015, the court issued its ordering terminating the mother's parental rights[1] under Iowa Code sections 232.116(1)(f) and (h) (2015). The mother filed a petition on appeal challenging that outcome.

## II.     Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We are not bound by the juvenile court's findings of fact, but we give them weight, particularly when assessing the credibility of witnesses. *Id.* Our court will uphold an order severing the parent-child relationship if the record contains clear and convincing evidence to support the grounds for termination under Iowa Code section 232.116(1). *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there

---

[1] The order also terminated the legal rights of M.M.'s father, as well as the putative and legal fathers of C.R. and C.B. Those individuals are not parties to this appeal.

are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

**III.    Analysis of Mother's Arguments**

The mother divides her petition into three assignments of error. First, she argues the State did not offer clear and convincing evidence to support termination under sections 232.116(1)(f) and (h). She includes in that division her request to delay permanency for six more months and an argument concerning reasonable efforts. Second, she urges termination is not in the best interests of the children under section 232.116(2). Third, she contends the closeness of her relationship with the children should have precluded termination under section 232.116(3)(c). We will address each argument in sequence.

**A.  Statutory Grounds, Reasonable Efforts, and Additional Time**

The juvenile court rested its termination decision on paragraph (f)[2] for M.M. and paragraph (h)[3] for C.B. and C.R. The record shows the mother was

---

[2] This section reads:

> (1) The child is four years of age or older. (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96. (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days. (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

[3] Iowa Code section 232.116(1)(h) reads:

> (1) The child is three years of age or younger. (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96. (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days. (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

unable to resume custody of the children at the time of the termination hearing, and, in fact, she did not ask for that result. Rather, her only request at the hearing was for a six-month extension to work toward reunification.

On appeal, while the mother briefly mentions in her petition that there was not clear and convincing evidence to support termination under these subsections, the thrust of her argument is that the court "incorrectly denied her request to extend permanency another six months to afford [her] the opportunity to take full advantage of court ordered services." We unpack her argument into separate claims concerning reasonable efforts and an extension of permanency.

**1. Reasonable Efforts**

Our code requires the DHS to "make every reasonable effort" to return children to their home "as quickly as possible consistent with the best interests of the child." *See* Iowa Code § 232.102(7). The core of the reasonable-efforts requirement is on providing services to improve parenting. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

On appeal, the mother contends she needs more time to reunify with her children because two aspects of the case permanency plan were not accomplished by the DHS: (1) housing assistance and (2) trauma therapy known as Eye Movement Desensitization Reprocessing (EMDR).

For housing assistance, the mother testified her DHS case worker did provide her a list of places she could call, though some of them did not pan out because of funding issues. The mother also testified she had been approved for

two different apartments. Accordingly, we do not find a lack of reasonable efforts regarding housing assistance.

On the issue of addressing her past traumas, the mother acknowledges that in February 2015 her therapist opined she was not ready for EMDR therapy because she continued to abuse substances and maintained a relationship with a man who had committed domestic abuse against her. The therapist believed patients would not benefit from EMDR therapy if they have instability in their lives and are not "in a clear frame of mind and ready to make sincere changes." But the mother faults the DHS for not making a more recent inquiry of her therapist regarding the suitability of EMDR treatment. The DHS worker maintained that all the department could do was to encourage the mother "to make herself a viable candidate for EMDR." The record shows the mother has not adequately addressed either her substance abuse or mental health stability. Accordingly, we reject her argument that the DHS failed to make reasonable efforts as to EMDR therapy.

### 2. Six-month Extension

The mother contends her continued progress in addressing her substance abuse and mental health issues, together with improvement in her parenting skills, merits delaying termination so she can receive services and work toward reunification.

Iowa Code section 232.104(2)(b) allows a juvenile court to

[e]nter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific

factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

To continue placement for six months, the statute requires the court to make a determination the cause for removal will be remedied at the end of the extension. *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). The juvenile court was unable to make such a finding here, stating: "There does not appear to be a reasonable basis to believe that [the mother] will improve in the near future." The court relied on the FSRP worker's view that "significant improvement is not anticipated in the next six months." We give weight to this fact finding by the juvenile court and decline to extend the permanency decision for an additional six months.

### B. Best Interests of the Children

The mother also contends it was not in the children's best interest to terminate her rights. She reasons that because they are doing well in family foster care, a six-month extension would not have a negative impact. She recognizes her daughter M.M. was "struggling" with the situation, but suggests M.M.'s participation in therapy would help the child deal with the uncertainty.

Our determination of best interests must track Iowa Code section 232.116(2). *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (rejecting judges' use of an unstructured best-interest test). That provision requires us to give primary consideration to the children's safety, the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2). In this case, the juvenile court did not

believe the mother could keep the children safe or provide for their emotional needs. The court expressed "serious doubts" as to the mother's "ability to effectively communicate and monitor the children without the children's safety being at issue." The court noted the children were integrated into their foster family and thriving in that placement. We agree with the juvenile court's conclusion that termination was in the children's best interests under the framework in section 232.116(2).

### C. Closeness of Relationship

Finally, the mother asserts all three children have a close emotional bond with her, they are excited to see her at the start of each visitation, and they enjoy spending time with her. She argues the record contains clear and convincing evidence termination would be detrimental to them based on the closeness of the relationship. *See* Iowa Code § 232.116(3)(c).

The factors weighing against termination in section 232.116(3) are permissive, meaning the juvenile court may consider the unique circumstances of each case when deciding whether to apply any of those factors to save the parent-child relationship. *A.M.*, 843 N.W.2d at 113. We agree with the juvenile court's conclusion that no permissive factor should be invoked in this case to prevent termination. We have no doubt the mother loves her children. But when we weigh the strength of the bond against the safety risk of returning the children, we find the decision to terminate should be upheld.

**AFFIRMED.**